**DOHERTY v. STONER et al.**

No. 9694.

United States Court of Appeals
District of Columbia Circuit.

Argued May 11, 1948.
Decided Sept. 7, 1948.

Mr. Spencer Gordon, of Washington, D. C., with whom Miss Eleanor Sessoms and Mr. Cornelius H. Doherty, both of Washington, D.C., were on the brief, for appellant.

Mr. Prentice E. Edrington, of New Orleans, La., for appellees.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

In this case we are called on to decide the proper method of computing an executor's commissions under the District of Columbia statute,[1] which provides that such commissions shall be "at the discretion of the court" and shall not exceed "ten per centum * * * of the inventory or inventories".

Mrs. Christina Buchholz died January 15, 1945. The appellant, Cornelius H. Doherty, is the executor of her will which directed that "he be allowed the maximum compensation permitted by law," a direction which nullified the court's statutory discretion as to the amount of his

---

[1] Title 20, § 605, D.C.Code 1940.

commissions.[2] The will also provided, after certain specific bequests, that the executor in his discretion should reduce to cash the remaining real and personal property and divide it equally among the residuary legatees, who are the appellees here. Pursuant to an order of court, the executor sold Mrs. Buchholz' real estate free of all liens. He realized $208,412.53, out of which it was necessary to pay lien debts, taxes, brokers' fees and title charges, aggregating $66,202.05. In accordance with a practice prevailing in the District of Columbia, settlement after the sale was handled by a title insurance company which received the purchase price, paid therefrom the debts and charges, and then turned over to the executor the net sum of $142,210.48.

The executor claimed a commission of ten per cent on the gross sale price of $208,-412.53. The excepting residuary legatees maintained that he was entitled only to ten per cent of the net sum of $142,210.48, as he had not actually received the larger amount and had not actually disbursed the money deducted and paid out by the title insurance company. In other words, the legatees were claiming that only the net received from the sale of realty, after payment of debts and expenses, could in the circumstances be included in the inventory upon which commissions are computed. The District Court's judgment upheld the contention of the legatees.

There is no real question here as to whether realty is properly embraced in inventory;[3] the only controversy with respect to the real estate is whether the gross or net value should have been included in the base on which commission was claimed. Settlement with the purchasers through a title company, the agent of the executor,

did not change the nature of the transaction. The executor transferred the unencumbered legal title to the realty. The estate owed the mortgage debts and was liable for the taxes and the charges connected with the sales. Whether the executor or his agent wrote checks for the sums required to be paid at closing was immaterial. The argument to the contrary seems to us to be unrealistic.

Another aspect of the case is much the same. When Mrs. Buchholz died on January 15, 1945, she had on deposit in a local bank the sum of $44,219.73, and the bank held her promissory note for $25,000 due January 28, 1945. On the due date, three days before the executor qualified, the bank charged the account with $25,166.-67 (the note and accrued interest) and thereafter the executor succeeded to a credit of only $19,053.06. He claimed a commission on the deposit of $44,219.73, which he says was properly a part of the inventory. The legatees were upheld by the District Court in saying Doherty was entitled to a commission on only $19,053.06, as he did not actually pay the note and the interest. We do not agree. Mrs. Buchholz' estate was to be inventoried as of the date of her death, which was January 15. At that time the bank owed her $44,219.73, due on demand. Her note could not be set off by the bank until its maturity on January 28. When on the due date the bank charged the account with the note and interest, it was just as though the executor had written his check for the sum then due. We hold that the deposit of $44,219.73 was properly a part of the inventory upon which commissions are calculated.

The appellees complained further that the executor paid to himself, during

[2] Washington Loan and Trust Co. v. Convention of Protestant Episcopal Church of the Diocese of Washington et al., 54 App.D.C. 14, 293 F. 833, 34 A. L.R. 913.

[3] In Mersch, on Probate Court Practice in the District of Columbia, a recognized authority, it is said, on page 305:

"Section 365; T. 29, Sec. 265, allows a commission of from 1% to 10% on 'the amount of the inventory or inventories excluding what is lost or perished.' Such items as (a) profits realized on sale or redemption of principal assets, (b) advances by heirs or legatees to make up a deficiency in cash to pay debts, (c) the proceeds of real estate sold in the probate court, are not in practice made the subject of supplemental inventories. Nevertheless these, (as well as any assets discovered after the original inventories, which should be separately inventoried) are considered proper items in the base, on which commission is claimed, on principal assets, whether inventoried or not!"

the first year of his administration, advances on commissions in the aggregate sum of $20,102.50; that he was not entitled to any part of his commissions until his work had been done and the court had fixed and allowed his compensation and authorized its payment. Because of these allegedly improper advances to himself, the legatees sought to charge the executor with interest thereon at the rate of six per cent per annum from the dates of the withdrawals until the payment of commissions should be authorized by the court. The District Court again sustained the legatees.

An executor is not entitled to a commission, we held in Brosnan v. Fox,[4] prior to final settlement of the estate or termination of his services. But in Maloney v. Foundry Methodist Episcopal Church,[5] we limited the rule of the Brosnan case, pointing out that it is a principle of safety and caution in the payment of executors, and not a statutory rule. It should not be applied, we said, in such a way as to create unnecessary hardship. We adhere to the essential principle of the Brosnan decision and reiterate that an executor should not make payments to himself on account of commissions until he has been authorized by the court to do so. In most cases, at the termination of his services, the executor's commission is fixed by the court within the statutory range. Until that has been done, the amount of compensation which the executor will receive is undetermined. Moreover, death or disability may prevent an executor from completing the administration of his trust. As a general rule, therefore, it is unsafe to permit advances on commissions before the services are terminated.

In this case, however, it was certain, because of the size of the inventory and the provision of the will fixing his compensation at ten per cent thereof, that the executor would ultimately be entitled to commissions largely in excess of the sums aggregating $20,102.50 which he withdrew prematurely. Although it was improper for the executor to make the unauthorized withdrawals, no damage has resulted either to the estate or to the residuary legatees. Doherty did not die, resign or become dis-

abled prior to the time when in due course the commissions would have been allowed, and he has substantially completed his work. The estate was not deprived of income on the amounts withdrawn too early, since, ordinarily, an executor does not make investments and is not charged with interest on the cash in his hands during the normal course of administration. To require this executor to pay interest to the estate on the sums prematurely withdrawn by way of commissions would, therefore, be nothing more than punishment for an unauthorized but harmless act. In the circumstances here disclosed, we think such punishment is unjustifiable.

Reversed.

---

[4] 52 App.D.C. 143, 284 F. 923.

[5] 78 U.S.App.D.C. 263, 139 F.2d 388.